ALVA R. ROBINSON *et als. v.* WEIMER-WARREN COMPANY *et als.*

(No. 6792)

Submitted February 10, 1931. Decided February 17, 1931.

144

*John C. Palmer, Jr., Abraham Pinsky* and *Walter E. Mahan,* for appellants.

*Ramsay & Wilkin,* for appellees.

LIVELY, JUDGE:

The trial court sustained a demurrer to plaintiffs' bill of complaint, and dismissed it without prejudice. On this appeal the sufficiency of the bill is the only question presented.

The object of the bill is to obtain a settlement between the defendant corporation and defendants, Harry Warren and Robert E. Weimer; to ascertain the assets and liabilities of defendant corporation; to restrain defendants Warren and Weimer from further conducting the affairs of the corporation; for the appointment of a receiver of the corporation; and to wind up its affairs and dissolve it.

From the certificate of incorporation of defendant company, filed as an exhibit with the bill, it appears that the charter was issued in April, 1922, the five incorporators being R. E. Weimer (defendant), H. B. Warren (defendant), M. A. Speicher, F. R. Kinnery and G. A. Preest, each of whom had subscribed for 220 shares of the stock, amounting in all to 1100 shares, and had paid in the sum of $5,000.00. The total authorized stock was $50,000.00, divided into 2,000 shares or $25.00 each. The bill charges, upon "best belief," that of the stock issued, complainants own not less than one-fifth in interest and sets out the stock owned by the claimants at $4,500.00, (180 shares). It is charged that the stock held by Warren and Weimer, and others unknown to complainants, was illegally issued. The bill further charges, upon information, that the corporation has never been organized, but that if there was such organization Weimer became president and Warren the secretary and treasurer; that the corporation has been operating as such and continues to operate; that the

individual defendants control its entire affairs and have refused to give complainants any information, or allow them to inspect the books, and have failed to call general or special meetings of the stockholders; that the individual defendants have received large sums of money from the manufacture and sale of the corporation's product produced by it, and have misappropriated the money received therefrom; that no dividends have been paid; that stock of the corporation has been issued to persons unknown without consideration; that complainants do not know what amounts are in the treasury; what amounts are owing by it; what the profits and losses are; what dividends should be paid, if any; whether the corporation is solvent or not; how much capital stock has been issued *bona fide*, or how much has been issued illegally, or who are the holders of the stock; why the capital stock was issued; what amount of money has been misappropriated; what business the corporation is doing; who are the creditors or debtors; all because the affairs are in the hands of the individual defendants; and there is a further charge, ''so far as plaintiffs are aware that there is a great danger of insolvency.'' Therefore, plaintiffs aver that it would be to the interest of the stockholders that there be a winding up of the corporation and a sale of the corporate property, and pray as above set out.

The bill impels the conclusion that plaintiffs know nothing about the conduct of the affairs of the corporation, and sue for a dissolution and winding up of its affairs, if perchance it happens that such should be done. Many of the allegations are contradictory of each other. Illustrative, is the allegation that the individual defendants own no stock and that there has never been any organization under the charter; whereas, the charter exhibited shows that said defendants were incorporators and had subscribed and paid for stock; and the fact that stock had been issued to plaintiffs in the various amounts set out in the bill (and which they say was all the stock issued) impels the conclusion of an organization under the charter. Practically all of the derelictions of the individual defendants alleged to exist could have been corrected, if any exist, other than by a bill to wind up its affairs.

"Mismanagement and misappropriation of the funds of the corporation by a managing officer or director are matters to be redressed by the corporation, by proper proceeding in the name of the corporation in the first instance, or by the stockholders on default of action by the directors. And it must appear by allegation and proof, that the wrongs in fact exist, and that a stockholder has first applied to corporate authorities for redress of his grievances before he will be entertained by a bill in a court of equity." *Ward* v. *Hotel,* 65 W. Va. 721, 724. Meetings of the stockholders may be had upon call made by any number of stockholders holding together at least one-tenth of the capital. Code, chapter 53, section 41. The books and records of the corporation shall be produced when required by the stockholders at any general meeting; and the minutes and resolutions of the board shall be open for inspection thirty days before the annual meeting to the inspection of any committee appointed in writing by at least one-twentieth part of the total value of the outstanding shares, or by the holder or holders of such number of shares. Code, chapter 53, section 47. The corporation laws afford a remedy for many of the supposed evils of which the bill complains. The bill does not show good cause for the dissolution under Code, chapter 53, section 57, and it is necessary for the bill to allege such good cause before it can be entertained. *Ward* v. *Hotel,* 65 W. Va. 721, 63 S. E. 613.

The *suggested* insolvency is not sufficient. Facts must be pleaded showing insolvency, or reasonable grounds from which insolvency can be inferred. The charges of misappropriation of funds by Warren are too general. In a bill by minority stockholders seeking relief against officers for mismanagement and misappropriation it must allege the particular things done constituting mismanagement and misappropriation. Conclusions of misappropriation or mismanagement must be based on facts pleaded. *Moore* v. *Lewisburg & Ronceverte Ry. Co.,* 80 W. Va. 653. But it is argued by appellants' counsel that the bill is for discovery and should be entertained as such. There is no prayer for discovery. The prayer asks that Warren and Weimer be required to answer the bill and "especially those interrogatories as set forth in para-

graph VI of this bill under oath." We find no interrogatories in said paragraph VI. That paragraph says that complainants are unable to allege what amounts are in the treasury; what amounts are owing; what the profits and losses are; who the officers are; what dividends should be paid, if any; whether the corporation is insolvent; how much capital stock has been issued and to whom; who are holders of illegal stock and why issued; what amount has been misappropriated for Warren's use; what business the corporation is doing; and who the creditors are; all for the reason that the corporation is in the hands of Warren and Weimer. Should we consider that paragraph as containing interrogatories, the matters therein broached could have been obtained as before set out without the aid of a court of equity. We find a number of interrogatories printed in the record, but they are not referred to in the bill and are no part of it. We are considering the sufficiency of the bill alone. The relief sought is a dissolution of the corporation and sale of its assets. The bill is not a bill for discovery purely, even if we should say that paragraph VI seeks discovery. The facts sought to be ascertained may or may not be necessary to the relief sought. Good cause must be alleged to give jurisdiction to the court to grant the relief prayed for in a bill by minority stockholders to wind up its affairs under the statute. The bill is nothing more than a groping for good cause, which good cause, if any, could have been ascertained under the adequate remedy afforded by the corporation laws. Moreover, the winding up of the corporation and dissolution under the statute (Code 1923, chapter 53, section 57) are merely colorable for the purpose of giving the court jurisdiction under the statute in order that plaintiffs may oust Warren and Weimer by appointment of a receiver and also to find out if a good cause for dissolution exists. Plaintiffs say that they own $4,500.00 worth of the stock which, at $25.00 per share, would be 180 shares held by them, while the charter exhibited shows that 1100 shares had been subscribed by defendants Warren and Weimer and other incorporators and $5,000.00 paid thereon. It is evident that plaintiffs own less than one-fifth of the stock, although they charge that they own "upon best knowl-

edge" not less than one-fifth of the *bona fide* stock. The statute above cited requires not less than one-fifth of the stockholders to join in a bill thereunder for dissolution for good cause. Averments for equitable jurisdiction in a bill which by other portions thereof are shown to be merely colorable for jurisdiction will not give equity jurisdiction if the real cause of action is one for which plaintiff has an adequate remedy at law. *Amick* v. *Ellis*, 53 W. Va. 421; *Thompson* v. *Whittaker*, 41 W. Va. 574; *Laidley* v. *Laidley*, 25 W. Va. 525.

The demurrer was properly sustained, and the decree is affirmed.

*Affirmed.*