15943

LOWERY v. CALLAHAN *ET AL.*
(42 S. E. (2d) 457)

*Messrs. J. G. Leatherwood* and *W. E. Bowen,* of Greenville, for Appellant, cite:

*Messrs. Price & Poag,* of Greenville, for Respondents, cite:

May 3, 1947.

TAYLOR, AJ.: This appeal comes to this Court from Greenville County where appellant moved before His Honor, W. B. McGowan, Judge of the aforesaid County Court to open up and vacate two judgments which had previously been rendered in the name of the plaintiff, H. J. Lowery, administrator of the estate of Boyd J. Lowery, deceased,

against S. A. Callahan and Mrs. Nora Alice Callahan, the respondents in this case; the judgments having been rendered in the sum of Five Hundred ($500.00) Dollars and One Hundred ($100.00) Dollars, for the wrongful death under Lord Campbell's Act and for pain and suffering, said judgments having been paid, and marked satisfied by the plaintiff. ♦

The motion was heard on plaintiff's affidavits, the records of the Probate Court, oral testimony of defendants and the testimony taken before Judge McGowan at the time the judgments were rendered. Judge McGowan filed his Order refusing said motion; hence this appeal upon exceptions that raise the questions of whether or not Judge McGowan abused his discretion, and whether or not error was committed in not holding that the Court was without jurisdiction to render said judgments.

An examination of the record shows that Boyd J. Lowery, a minor, came to his death while riding on the front of an automobile in a parade for the purpose of advertising a Bible School for children which was being sponsored by his church. A large number of children participated in the parade, to such an extent that there was not room for all in the cars. The deceased, after being admonished, persisted in perching on the front of the Callahan car; and while the car was progressing in a straight line at a slow rate of speed, the deceased stood up, slipped and fell beneath the right front wheel and sustained injuries from which he later died.

Two friendly actions were instituted by the administrator; one under Lord Campbell's Act, and the other under the survival statute; both of which were settled and paid after a hearing at which all parties were present and represented by able counsel. Testimony was taken and the plaintiff was at that time advised by Judge McGowan that the settlement was a final determination of the matter.

The petition of the plaintiff in those proceedings, the appellant here, which he verified, reads as follows:

## "II

"That their son, Boyd J. Lowery, was eleven (11) years of age, and living with them at 241 Ligon Street, Mills Mill, Greenville, South Carolina. He is informed and believes that, in preparation for the Daily Vacation Bible School at the Mills Mill Baptist Church, the pastor of said Church, Rev. W. T. Chewning, asked the boys and girls of the church to meet at the church on June 7, 1946, and parade around the mill village, in order to create interest in said Bible School. That when they met at the church there were not enough automobiles to carry all of the boys and girls. Therefore, the larger boys sat on the front fenders of some of the automobiles; before they got on the fenders, they were cautioned, first, not to get on the fenders, and when they insisted, they were cautioned to hold tight. Their son, Boyd J. Lowery, was one of the larger boys, sitting on the fender of Mr. S. A. Callahan's car, driven by Mrs. Nora Alice Callahan. The procession of cars went up and down the street in Mills Mill village, and just before they returned to the church, he is informed and believes that his son, in some way turned loose his hold on the car and fell off in front of the Callahan automobile. Mrs. Callahan applied her brakes, and stopped almost instantly, but was unable to stop before running against their son.

## "III

"That his investigation of the accident leads him to believe that the accident was certainly as much the fault of his deceased son as it was of Mrs. Callahan. He feels that if his son had not turned loose his hold on the automobile, he would not have fallen off and gotten killed. He does not believe that the defendants were entirely at fault for the accident, and, under the facts and circumstances, he believes that the offer of compromise on the part of the defendants, in the sum of Five Hundred ($500.00) Dollars, is reasonable, just and equitable, and should be accepted.

"WHEREFORE, your Petitioner prays that the Court pass an Order approving the settlement of all claims under the Lord Campbell's Act for the sum of Five Hundred ($500.00) Dollars."

In 53 C. J. 1206, 1207, we find:

"The same principles of adequacy of consideration which apply to other contracts, govern as to releases. When the consideration agreed upon for a release is something of value, the courts will generally, in the absence of fraud, coercion, and undue influence, and if the parties are competent, not avoid the release on the ground of the inadequacy of the consideration of the release, for the contracting parties, and not the courts, must determine the *quid pro quo*. The rule has been held to apply, even though the settlement is improvident, and even where the releasor was ignorant of his rights. Events subsequent to the execution of a release cannot be considered in determining the adequacy of the consideration therefor." See also 12 C. J. 334.

Rev. Chewning, one of the witnesses, testified as follows: "Q. Was there any discussion as to whether Mrs. Callahan should pay any amount of money in connection with the death of the child?" "A. No discussion then at all. Only, this, Mr. Lowery told me after he had investigated it further with me told me and others, too, that he knew with Mrs. Callahan it was an unavoidable accident; and the same fact was stated to the Coroner."

Mr. J. O. Turner, the Coroner for Greenville County, testified that both Mr. and Mrs. Lowery told him that they were certain that they didn't want an inquest; that they were certain that it couldn't have been helped; and that they didn't hold Mrs. Callahan responsible.

Similar statements were made to several other witnesses, and the plaintiff himself testified that he was satisfied with the settlement of Six Hundred ($600.00) Dollars, that he didn't blame Mrs. Callahan for the accident, and that he

"understood when Judge McGowan signed the papers that was an end to the matter".

The record discloses that the reputable attorneys and ■ the learned Trial Judge took great pains to advise Mr. Lowery of his rights. There is no question but that Mr. Lowery was in possession of his full mental capacities, and there could have been no misunderstanding on his part as to what those rights were. No fraud was alleged or proven and there is no evidence of undue influence or coercion. Neither is there such showing on the part of the appellant as to mistake, inadvertance or excusable neglect that would warrant this Court in saying that the Trial Judge had abused his discretion in refusing to open up and vacate the judgments previously entered.

The other question raised upon appeal is that the ■ Court was without jurisdiction in that no consent of the .Probate Judge or of counsel actually representing plaintiff was had to the compromise settlement. The appellant made his own investigation and was acting on his own behalf and was bound by his acts and agreement. The proceedings were in order in every respect, and counsel representing the plaintiff in the original instance was and is of unimpeachable integrity. Therefore, this exception is overruled as being without merit. The opinion of this Court is that the Order appealed from herein should be affirmed; and is so ordered.

Judgment affirmed.

BAKER, CJ., FISHBURNE, STUKES and OXNER, JJ., concur.