600 S.E.2d 543

**Lee BOWERS, As Guardian Ad Litem For Jessica May Jones, A Minor Under The Age Of (18), Plaintiff,**

**v.**

**South Carolina DEPARTMENT OF TRANSPORTATION, Respondent,**

**and**

**Viola Bryan Byson, Appellant.**

**Larry Jones and Charlotte Marie Jones, Respondents,**

**v.**

**South Carolina Department of Transportation, Respondent,**

**and**

**Viola Bryan Byson, Appellant.**

**Tiffany Miranda Jones, Plaintiff,**

**v.**

**South Carolina Department of Transportation, Respondent,**

**and**

**Viola Bryan Byson, Appellant.**

**and**

**Larry Jones and Charlotte Marie Jones, Appellants**

**v.**

**South Carolina Department of Transportation and Viola Bryan Byson, Respondents.**

**No. 3810.**

Court of Appeals of South Carolina.

Heard May 12, 2004.

Decided June 1, 2004.

Rehearing Denied Aug. 23, 2004.

150

Consolidated Appeals from Beaufort County; Jackson V. Gregory, Circuit Court Judge.

James H. Moss, of Beaufort, for Appellant Viola Bryan Byson.

Darrell Thomas Johnson, Jr. and Mills Lane Morrison, Jr., of Hardeeville, for Appellants Larry Jones and Charlotte Marie Jones.

Marshall H. Waldron, Jr., of Bluffton, for Respondent South Carolina Department of Transportation.

KITTREDGE, J.:

These actions arise from an automobile accident involving Viola Bryan Byson and the minor daughter of Larry and Charlotte Jones. The Joneses and Byson settled their property damage and personal injury actions and each executed a release of all other claims arising from the accident. Each later raised separate claims against the South Carolina Department of Transportation (SCDOT), asserting the department's negligence contributed to the accident. In both cases, the circuit court granted summary judgment in favor of SCDOT on the grounds the action was barred by the releases. We consolidate these appeals pursuant to Rule 214, SCACR, and affirm.

## FACTS/PROCEDURAL HISTORY

In December 1998, Appellant Viola Byson was driving on Highway 21 in Beaufort County. At the same time, Appellant Charlotte Jones was traveling in the family pickup truck driven by her daughter, Tiffany Jones. The Joneses drove out of a parking lot along the highway into the path of Byson's car. The two vehicles collided causing serious injuries to all parties.

Byson later filed suit against Tiffany Jones, alleging her negligence caused the accident. In March 2000, Byson and Tiffany Jones settled the case. Byson accepted $9,000 from Tiffany Jones' insurance company and signed a release. From

the same carrier, Larry and Charlotte Jones accepted insurance payments for their property damage and personal injuries, and they too signed a release. The Joneses and Byson were represented by counsel.

The releases executed by Byson and the Joneses are identical, except for the signatures and amount of consideration. In pertinent part, they provide:

[T]he undersigned hereby releases and forever discharges [the tort-feasor] and all other persons, firms or corporations liable or, who might be claimed to be liable ... from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 23 day of December, 1998 at or near Beaufort, S.C. .... Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

Shortly after signing the releases, the Joneses and Byson asserted separate claims against the SCDOT, alleging its negligence contributed to the accident. Specifically, they claimed SCDOT breached its duty to properly keep the roadway clear of bushes and brush thereby obstructing Tiffany Jones' view of the roadway and preventing her from safely entering traffic on Highway 21. On SCDOT's motion for summary judgment, the circuit court dismissed both claims, finding the suits were barred by the "clear and unequivocal" terms of the releases.[1] The Joneses and Byson appeal.

## STANDARD OF REVIEW

A trial court should grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories,

---

1. SCDOT moved for summary judgment on multiple grounds. The circuit court granted summary judgment only as to the releases. The balance of the motion was denied due to disputed "factual issues."

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *see also Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997); *Wells v. City of Lynchburg*, 331 S.C. 296, 301, 501 S.E.2d 746, 749 (Ct.App.1998). However, the circuit court may properly consider only "such facts as would be admissible in evidence." Rule 56(e), SCRCP; *Hall v. Fedor*, 349 S.C. 169, 175, 561 S.E.2d 654, 657 (Ct.App.2002) (stating "materials used to support or refute a motion for summary judgment must be those which would be admissible in evidence"). In reviewing a grant of summary judgment, this court applies the same standard that governs the circuit court: summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 114–15, 410 S.E.2d 537, 545 (1991).

## *DISCUSSION*

■ Appellants argue the circuit court erred by finding their claims against SCDOT were barred by the releases they signed (collectively, the "Release"). We disagree.

■ The Release is a contract. *See Hyman v. Ford Motor Co.*, 142 F.Supp.2d 735 (D.S.C.2001) (applying South Carolina law, contract principles invoked to determine validity of a release); *Lowery v. Callahan*, 210 S.C. 300, 300, 42 S.E.2d 457, 458 (1947) (noting that the "same principles of adequacy of consideration which apply to other contracts, govern as to releases"); 18 S.C. Jur. *Release* § 2 (2003) ("Because a release is a contract, principles of law applicable to contracts generally are also applicable to releases."). "In construing terms in contracts, this Court must first look at the language of the contract to determine the intentions of the parties." *C.A.N. Enterprises, Inc. v. South Carolina Health & Human Services Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988). Since the Release unambiguously sets forth the contracting parties' intent, we are bound by that clearly expressed intent without resort to extrinsic evidence. "Extrinsic evidence giving the contract a different meaning from that

indicated by its plain terms is inadmissible." *Id.* at 377–78, 373 S.E.2d at 586. Accordingly, the circuit court applied the proper summary judgment standard and correctly determined Appellants' unmistakable intent from the terms of the Release without resort to affidavits and deposition excerpts. *Hall,* 349 S.C. at 175, 561 S.E.2d at 657.

In *Bartholomew v. McCartha,* 255 S.C. 489, 179 S.E.2d 912 (1971), our supreme court stated that "the release of one tort-feasor does not release others who wrongfully contributed to plaintiff's injuries unless this was the intention of the parties, or unless plaintiff has, in fact, received full compensation amounting to a satisfaction." *Id.* at 491, 179 S.E.2d at 913. The circuit court based its determination on both prongs of *Bartholomew,* concluding that, under the terms of the Release, the parties received full compensation and intended that all claims for injuries would be relinquished. We agree.

The terms of the Release do not evince an intent to limit its scope to any specifically identified parties. Rather, the Release is general and all encompassing in its scope. It clearly states that the Appellants released the tort-feasor "and all other persons, firms or corporations liable, or who might be claimed to be liable." This language is a clear, explicit, and unequivocal indication of the parties' intent that *all* claims arising from the accident—now and in the future—are barred under the terms of the Release. Had Appellants intended a contrary result and desired to limit the operation of the Release to named persons only, the terms of the Release could have been easily tailored to that end. We are constrained by the plain, unambiguous language of the Release to find that Appellants' claims against SCDOT fall within the terms of the Release.

This result is also compelled under the second prong of *Bartholomew.* The Release clearly and unequivocally contemplates that the respective settlement payments to Appellants constituted a "full compensation amounting to a satisfaction."

Appellants, however, argue that "damages to be awarded for injury and resulting pain and suffering cannot be determined with mathematical precision" and this determination is, therefore, always "an issue of fact." They essentially argue that full compensation is always a function of the jury's discretion, rendering summary judgment unavailable. While

we agree that damages, especially non-pecuniary damages, in a personal injury claim are difficult to ascertain in light of the broad discretion accorded the trier of fact, Appellants misconstrue the precise issue before us. The issue is not determining the exact amount (assuming liability) a jury would award. Instead, the issue is "full compensation *amounting to a satisfaction.*" *Id.* at 491, 179 S.E.2d at 913. (emphasis added)

A "satisfaction" is generally defined as "[t]he discharge of an obligation by paying a party what is due to him" or "[t]he performance of a substituted obligation in return for the discharge of the original obligation." *Black's Law Dictionary* 1342 (6th ed.1990). In cases involving a disputed or liquidated claim arising in contract or tort, the parties will reach an "accord" whereby one of the parties agrees to accept as "satisfaction" of the disputed claim some performance or undertaking different from that which he considers himself entitled. *See South Carolina Farm Bureau Mut. Ins. Co. v. Kelly,* 345 S.C. 232, 239, 547 S.E.2d 871, 875 (Ct.App.2001) (noting that "[a]n accord and satisfaction occurs when there is (1) an agreement to accept in discharge of an obligation something different from that which the creditor is claiming or is entitled to receive; and (2) payment of the consideration expressed in the new agreement.") (quoting *Tremont Constr. Co. v. Dunlap,* 310 S.C. 180, 182, 425 S.E.2d 792, 793 (Ct.App. 1992); *Mercury Marine Div. v. Costas,* 288 S.C. 383, 386, 342 S.E.2d 632, 633 (Ct.App.1986)). Indeed, parties regularly reach compromise settlements for a variety of reasons, including the vagaries and unpredictability of litigation and the desire for finality. Where, as here, a party accepts "a full and final compromise adjustment and settlement of any and all claims," such amounts to a *Bartholomew* satisfaction, thereby extending the preclusive effect of the release to nonparties to the instrument.

We reject the suggestion that *Bartholomew v. McCartha* has been overruled by the Uniform Contribution Among Tortfeasors Act (UCATA). S.C.Code Ann. §§ 15–38–10 to 70 (Supp.2003). In our judgment, UCATA mirrors the rule in *Bartholomew.* Section 15–38–50 provides in part that a release "does not discharge any of the other tortfeasors from liability ... *unless its terms so provide* ...."(emphasis added). In any event, UCATA "shall not apply to governmental entities ... [and the] South Carolina Tort Claims Act is the

exclusive and sole remedy for any tort committed by an employee of a governmental entity...." *S.C.Code Ann.* § 15–38–65 (Supp.1999). UCATA, thus, does not apply to SCDOT.

## *CONCLUSION*

The terms of the Release here are clear and unambiguous: Appellants released "all other persons, firms or corporations liable or, who might be claimed to be liable" and the settlement was accepted as a "full and final compromise ... precluding forever any further or additional claims arising out of the aforesaid accident." The Release, by its unmistakable terms, establishes Appellants' intent as a matter of law, and forecloses the need for any further inquiry regarding both its scope and the presence of "full compensation amounting to a satisfaction." The explicit, plain language of the Release permits no other finding. We therefore find the Release bars Appellants' actions against SCDOT. The circuit court's grant of summary judgment in favor of Respondent is

**AFFIRMED.**

ANDERSON and HUFF, JJ., concur.